[Cite as *Fravel v. BMW of N. Am., L.L.C.*, 2025-Ohio-249.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

JOHN FRAVEL

    Appellee

    v.

BMW OF NORTH AMERICA, LLC

    Appellant

C.A. No.     30929

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2019-12-4886

DECISION AND JOURNAL ENTRY

Dated: January 29, 2025

CARR, Presiding Judge.

{¶1} Defendant-Appellant BMW of North America, LLC ("BMW") appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In December 2019, Plaintiff-Appellee John Fravel filed a complaint against BMW asserting violations of Ohio lemon law, Magnuson-Moss Federal Trade Commission Act, express warranty, implied warranty of merchantability, implied warranty of fitness for a particular purpose, implied warranty in tort, and the CSPA. The claims all related to a 2017 BMW X3 that Mr. Fravel had purchased from BMW of Akron in January 2018.

{¶3} Ultimately, the matter proceeded to a jury trial. Following the presentation of Mr. Fravel's case, BMW moved for directed verdict. The trial court granted BMW's motion in part and denied it part. BMW renewed its motion at the close of the case. The jury was then instructed as to the Ohio lemon law, express warranty, implied warranty in tort, and CSPA claims. The jury

found in favor of BMW on all the claims aside from the CSPA claim. As to the CSPA claim, the jury awarded Mr. Fravel $30,000.

{¶4} Thereafter, BMW filed a motion for judgment notwithstanding the verdict ("JNOV"). Mr. Fravel opposed the motion and BMW filed a reply. The trial court denied the motion.

{¶5} BMW has appealed, raising a single assignment of error for our review.

II.

## **ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY NOT GRANTING BMW OF NORTH AMERICA LLC'S ("BMW") DIRECTED VERDICT ("DV") OR JUDGMENT NOTWITHSTANDING THE VERDICT ("JNOV") MOTIONS REGARDING THE DERIVATIVE CSPA CLAIM WHICH WAS BASED ON THE EXISTENCE OF A WARRANTABLE DEFECT, WHERE THE JURY FOUND IN BMW'S FAVOR ON THE BREACH OF WARRANTY AND LEMON LAW CLAIMS, AND FOUND THAT THERE WAS NO DEFECT IN THE SUBJECT VEHICLE. GIVEN THE VERDICTS ON THE BREACH OF WARRANTY AND LEMON LAW CLAIMS, PER *LESTER V. FCA*, 2022-OHIO-1776, THERE WAS NO VIABLE BASIS UPON WHICH TO RECOVER UNDER OHIO'S CONSUMER SALES PRACTICES ACT ("CSPA").

{¶6} BMW asserts in its assignment of error that the trial court erred in denying its motions for directed verdict and JNOV. However, while BMW's stated assignment of error mentions directed verdict, it has not developed an argument specifically with respect to the denial of its directed verdict motion. Instead, BMW's motion focuses almost exclusively on the implications of the jury's verdict, which would not come into play at the stage of directed verdict. *Compare* Civ.R. 50(A) *with* Civ.R. 50(B). Accordingly, this Court will limit its discussion to whether the trial court erred in denying BMW's motion for JNOV.

{¶7} Civ.R. 50(B)(1) states, in relevant part:

Whether or not a motion to direct a verdict has been made or overruled, a party may serve a motion to have the verdict and any judgment entered thereon set aside and

to have judgment entered in accordance with the party's motion. Such a motion shall be served within twenty-eight days of the entry of judgment or, if the clerk has not completed service of the notice of judgment within the three-day period described in Civ.R. 58(B), within twenty-eight days of the date when the clerk actually completes service.

**{¶8}** "JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *Gibson Bros., Inc. v. Oberlin College*, 2022-Ohio-1079, ¶ 21 (9th Dist.), quoting *State v. The Jacts Group, LLC*, 2020-Ohio-1173, ¶ 29 (9th Dist.). "As a motion for JNOV is decided as a matter of law, this Court will address these arguments de novo." *Gibson Bros., Inc.* at ¶ 21.

**{¶9}** The facts detailed below were derived from the trial testimony and other evidence.

**{¶10}** On January 31, 2018, Mr. Fravel purchased a 2017 BMW X3 from BMW of Akron. The purchase price was $45,480.76. The vehicle was a loaner vehicle which had 5,406 miles on it at the time of purchase but was sold as new. The vehicle came with a warranty for 48 months or 50,000 miles, whichever came first. The vehicle replaced Mr. Fravel's 1997 BMW.

**{¶11}** Within the first year, Mr. Fravel began experiencing problems with the vehicle. When asked to describe the problem with the vehicle, Mr. Fravel indicated that "once in a great while" as you are coming to a stop, all of a sudden you would feel the car surge forward. Mr. Fravel indicated that the occurrences varied in intensity with the major ones sometimes pushing the car through an intersection, despite Mr. Fravel having both feet on the brake. The major incidents did not stop on their own; to end a major incident, Mr. Fravel would have to put both feet on the brake, then put the car in neutral and tap the accelerator. All eight incidents happened while braking and they would only happen sporadically.

{¶12} The first major incident occurred in late January 2019. Mr. Fravel was driving his elderly father home from a doctor's visit. Mr. Fravel was stopping at a light and preparing to make a right-hand turn. The vehicle began to surge and, despite Mr. Fravel having both feet on the brake, the vehicle went through the intersection during a red light.

{¶13} Mr. Fravel reported the problem to the Akron dealership. The vehicle was test driven multiple times by two different individuals and inspected. No fault codes were identified, and the dealership was unable to replicate the problem or identify its cause. However, the dealership told Mr. Fravel to bring the vehicle back if the issue persisted.

{¶14} Jason Zweifel, shop foreman of the Akron dealership testified as to the January 2019 investigation. There was testimony that the pedal has two separate sensors, and the system expects the voltage from the two sensors to align and agree with one another. If one of the sensors failed, the vehicle would go into limp mode and store a fault code. Limp mode allows the vehicle to be operated in a limited manner, such as to pull the vehicle over to the side of the road. If both sensors failed, the vehicle would not move. Mr. Zweifel did not know of a situation in which a failure of a pedal sensor would cause the vehicle to accelerate or surge. It would also cause a fault code to be generated. Mr. Zweifel opined that the pedals would not be visible to a person sitting in the front passenger seat and would only be visible to someone sitting in the middle back passenger seat if that person was leaning forward. Mr. Zweifel offered to test drive the vehicle with Mr. Fravel, but Mr. Fravel declined.

{¶15} Another major occurrence happened in early June 2019. That time, Mr. Fravel's wife was in the car in the front passenger seat. Mr. Fravel's wife indicated that during the incident, Mr. Fravel's fingers were clenched around the steering wheel, and he was pushing his foot as hard as he could on the brake and the car still was lurching forward. Mr. Fravel's wife indicated that it

stopped after Mr. Fravel put the vehicle in neutral. Mr. Fravel's wife testified that she saw Mr. Fravel's foot on the brake and was 100% certain it was on the brake.

{¶16} Mr. Fravel reported the issue to the Akron dealership and also to BMW. Mr. Fravel reached out to BMW because he believed something was seriously wrong with his vehicle. An inspection was scheduled with Tim Dowd, a BMW technical service engineer. The inspection was performed in mid-June but Mr. Fravel did not get his vehicle back until the end of July 2019. Mr. Zweifel indicated that the delay resulted because they were waiting for the inspection to be submitted, reviewed, and for Mr. Fravel to be contacted by BMW customer relations. In the interim, the Akron dealership provided Mr. Fravel with loaner vehicles. Mr. Fravel had no issues with the loaner cars.

{¶17} From June 2019 until early December 2019, Mr. Fravel exchanged dozens of emails and conversations with Jason Schank, Mr. Fravel's main contact with BMW. In a letter dated July 17, 2019, Mr. Schank informed Mr. Fravel the results of the inspection and testing by Mr. Dowd. While the letter reflected that a 17-mile road test was conducted, the corresponding repair order reflects only 9 miles were put on the vehicle. Once again, no abnormalities were identified, and the issue could not be replicated. After receiving the letter, Mr. Fravel requested Mr. Dowd's report, however, Mr. Fravel did not receive a copy of the report until September 25, 2019. He also asked to speak to Mr. Dowd but was told that he could not. Testimony indicated that certain things in the report were altered; however, as the report itself was not admitted into evidence, it is unclear what was altered in the report before it was provided to Mr. Fravel. Mr. Fravel asked for Mr. Dowd to perform an additional inspection and to be able to speak to Mr. Dowd. Mr. Dowd agreed to perform another inspection but would not speak to Mr. Fravel. When Mr. Fravel learned that Mr. Dowd would not speak to him, Mr. Fravel declined to have the vehicle inspected again.

{¶18} In the report, Mr. Dowd noted that the left front brake pad sensor appeared to be routed incorrectly. However, there was testimony that that issue did not relate to the alleged unintended acceleration, as the purpose of the brake pad sensor was to let the owner of the vehicle know if the brake pads were becoming worn. The sensor would not impact the safety of the vehicle as it was more of a convenience feature.

{¶19} Mr. Fravel experienced another major incident in November 2019. He reported it to Mr. Schank. It was Mr. Schank's opinion that Mr. Fravel might be putting his foot on the gas pedal instead of the brake, thereby unintentionally causing the incidents. Mr. Fravel denied that that was what was happening.

{¶20} An additional major occurrence happened in February 2020. Mr. Fravel was taking his wife in for surgery. Mr. Fravel's adult son was also in the vehicle. Mr. Fravel's son was seated in the middle back seat, and was leaning forward, in order to better converse with his parents. Mr. Fravel's son described the incident and testified that he saw Mr. Fravel's foot on the brake and that he was 100% positive that it was on the brake. Mr. Fravel's son stated that when the occurrence began, he immediately looked at Mr. Fravel's feet because Mr. Fravel's son had doubts about what was happening. Before he witnessed the incident, Mr. Fravel's son thought maybe Mr. Fravel was at fault and was accidentally hitting the accelerator. However, Mr. Fravel's son could confirm that during the February 2020 incident, Mr. Fravel was not pushing the accelerator pedal. Mr. Fravel again reported the issue to the Akron dealership; however, the invoice does not reflect those concerns. Nonetheless, maintenance work was performed on the front brakes.

{¶21} Ron Clark, a BMW technical service engineer, inspected the car and test drove it in November 2020. He also found no fault codes or problems with the vehicle that would cause the issue Mr. Fravel reported. Mr. Clark testified that in newer cars, such as the vehicle at issue,

the system is designed with a failsafe whereby there cannot be a failure where the car accelerates when it is not intended to do so. Mr. Clark asserted that what Mr. Fravel alleged happened during the incidents was a technical impossibility because in order for that to happen, the sensors "would have to fail in the exact same time at the exact same sweep in the pedal for th[e] car to accelerate on its own[.]" Mr. Clark also indicated that the lower right surface of the brake pedal of Mr. Fravel's vehicle and the corresponding pad had more wear. Thus, Mr. Clark thought it was possible that Mr. Fravel's foot may have hung over the edge of the brake pedal in the direction of the accelerator. Mr. Clark therefore believed that Mr. Fravel was sometimes unintentionally pressing both the brake pedal and accelerator pedal simultaneously, thereby causing the issue.

{¶22} Near the end of 2021, Mr. Fravel indicated that two additional moderate occurrences happened. The two incidents happened within the same week. An additional moderate episode happened in June 2022 and a minor one in July 2023.

{¶23} Jonathan Staley, a technical support engineer for BMW also testified. He performed a legal inspection of the vehicle in February 2022 at BMW's counsel's request. Again, the car was inspected, tested, and test driven. No fault codes were found, and the vehicle was determined to be operating as designed. Mr. Staley found no issues with the vehicle and no evidence of a defect. Mr. Staley spoke about the nature of the pedals sensors and how the vehicle would not accelerate if the pedal sensors failed. He agreed that it would be a scientific impossibility for the sensor failure to result in surging of the vehicle. Based in part on the wear pattern of the brake pedal and pad, as discussed by Mr. Clark, Mr. Stately also believed that Mr. Fravel was unintentionally pressing both the brake and accelerator pedals. Mr. Staley asserted that it would not be possible to see the pedals from the passenger seat or the middle back seat if one was sitting as one would normally sit. Mr. Staley asserted that you could potentially see the pedals

from the middle back seat if you were leaning forward and unbuckled. Mr. Staley testified that he would feel comfortable having his young children ride in Mr. Fravel's car.

{¶24} Mr. Fravel continued to drive the vehicle but did not take it on any long-distance trips and went out of his way to minimize its use. There was testimony that the vehicle was seen outside the courthouse during the trial. Mr. Fravel maintained that the issue made the car unsafe, particularly for someone with no experience with the issue. Mr. Fravel maintained that he would not have purchased the vehicle if he would have known about the issue ahead of time.

{¶25} BMW's main contention on appeal is that the jury's verdict for BMW on the Ohio lemon law and warranty claims essentially requires a verdict for it on Mr. Fravel's CSPA claim. In so doing, BMW argues that the jury found that the vehicle did not have a defect, and if it had no defect, then Mr. Fravel could not succeed on his CSPA claim. BMW primarily relies on *Lester v. FCA US LLC*, 2022-Ohio-1776 (1st Dist.), in support of its position; in so doing, it maintains that *Lester* is "dispositive" and "[d]irectly on [p]oint[.]"

{¶26} We cannot say that BMW has met its burden on appeal to demonstrate that the trial court erred in denying the motion for JNOV. First, we conclude this matter is distinguishable from *Lester*. Certainly, there are similarities between the cases. *Lester*, like this matter, involved an alleged failure to diagnose and repair a defect of a vehicle. *See id*. at ¶ 1. Both also involved warranty, lemon law, and CSPA claims. *See id.* at ¶ 21. Likewise, the jury in *Lester* found in favor of the defendant on all the claims aside from the CSPA claim. *See id.* However, unlike the jury in this matter, the jury in *Lester* had before it interrogatories. *Id.* at 21. The appellate court in *Lester* concluded that the trial court erred in denying the motion for JNOV as "[t]he jury specifically found no warrantable defect and that [the defendant] breached no warranty. Because Lester's CSPA claim was derivative of his other warranty claims, the jury's finding of no

warrantable defect was fatal to the CSPA claim, and the trial court should have granted [the defendant's] motion for JNOV on that claim." *Id.* at ¶ 40. Moreover, the appellate court noted that "[t]he jury's finding that [the defendant] committed an unfair or deceptive act by its dealer's failure to contact Lester about its possession of a device to diagnose a defect was inconsistent with its findings that the truck had no defect to diagnose or repair and that [the defendant] did not breach its warranties." *Id.* at ¶ 44.

{¶27} While BMW maintains that the jury here found there was no defect, the jury was not presented with any interrogatories. It is true that BMW requested an interrogatory asking the jury to decide whether there was a defect, but the trial court denied the motion and that matter is not before us in this appeal as BMW has not raised that issue in an assignment of error. BMW has not demonstrated that the jury found that there was no defect in the vehicle. Unlike in *Lester*, here there was no express finding concerning whether there was a defect. *See Lester* at ¶ 21.

{¶28} It is clear to this Court that the specific findings made by the jury in *Lester* were integral to its decision. The *Lester* court specifically referenced the jury's findings on multiple occasions. *See id.* at ¶ 1, 21, 34, 40, 43-44. In fact, the *Lester* court, in framing, and agreeing with, the defendant's argument noted that the defendant "argues that the trial court erred by not granting its motion for JNOV because the jury's findings of fact precluded recovery under the CSPA." *Id.* at ¶ 34.

{¶29} BMW asserts that the jury must have made that finding that there was no defect given its verdicts; however, we conclude this argument is misplaced. Each of the causes of action involved multiple different elements. In order to find for BMW on any claim, the jury only had to conclude that one element was not satisfied, whereas in order to find for Mr. Fravel, the jury would

have to conclude that all elements of the claim were met. Thus, this Court cannot know with certainty what the jury found or did not find with respect to the claims on which BMW prevailed.

{¶30} BMW does not allege that a CSPA claim is always derivative of a breach of warranty or lemon law claim but argues in this case it is because all the claims arise under the same nucleus of facts and the jury found against Mr. Fravel on the warranty and lemon law claims. BMW argues that in ruling against Mr. Fravel on these claims, the jury in essence found there was no defect. Again, we note that the jury did not make any finding regarding whether there was a defect as it was not presented with any interrogatories as to the issue. More importantly, the trial transcript establishes in great detail that a defect was not the sole alleged basis for relief under the CSPA as Mr. Fravel argued that BMW violated the CSPA in respect to how the whole process was handled including inaccuracies and intentional deletions and modifications by BMW in various documents.

{¶31} The CSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). Not only is the foregoing statement broad, the jury was also instructed on multiple ways in which it could conclude that BMW violated the CSPA. The instruction informed the jury that in order to find a violation of the CSPA, the jury must find by the greater weight of the evidence that any of the following occurred:

> 1. [T]he defendant sold Plaintiff a vehicle that was of a particular standard, quality or grade when it was not, and that this act or practice was unfair or deceptive; or
>
> 2. [T]he Defendant, who had a legal obligation to Plaintiff under the written warranty, breached, avoided, and/or attempted to avoid its obligations to Plaintiff; or

3. [T]he Defendant exhibited a pattern of inefficiency, stalling and/or incompetency with regard to its warranty repair work; or

4. Defendant's representation that the vehicle contained a valid warranty, which would cause effective warranty repairs to be made within a reasonable time and within the warranty period, was untrue; or

5. Defendant's representation that the vehicle contained, as a remedy, an effective warranty, which would cause effective warranty repairs to be made within a reasonable time and within the warranty period, was false.

{¶32} Mr. Fravel presented evidence that his vehicle had an ongoing, sporadic issue that was verified by two of his family members. BMW and dealership personnel were unable to replicate the issue or find any problem despite multiple inspections, test drives, and testing. BMW presented multiple witnesses who testified that the issue was technically impossible and that they believed Mr. Fravel caused the issue. While it is true that Mr. Fravel did not present any expert testimony as to what the defect was, BMW has not demonstrated that Mr. Fravel was obligated to do so.

{¶33} In addition, there was evidence about some of BMW's practices that could have troubled the jury. In June 2019, Mr. Dowd found a misrouted brake pad sensor that had not been discovered previously. There was also evidence that BMW's records were not always consistent, as a letter and repair order differed with respect to the mileage driven and it appears that at least one repair order, i.e. the February 2020 repair order, may not have reflected Mr. Fravel's concerns with respect to the unintended acceleration. There was also evidence that BMW altered a report in some unknown manner prior to sharing it with Mr. Fravel, that it took weeks for BMW to share that report with Mr. Fravel, and that BMW kept Mr. Fravel's vehicle for weeks even though the inspection was over. While all of these issues do not directly relate to the issue of the unintended acceleration, they can be viewed as evidencing that BMW may not have exercised as much care as required under the circumstances. Also, this evidence could be viewed by the jury as support

for a pattern of inefficiency, stalling and/or incompetency with regard to its warranty repair work. Overall, this Court cannot agree with BMW that the CSPA claim, in all respects, in light of the various facts presented to the jury and given the lack of interrogatories, was derivative of the lemon law or warranty claims.

{¶34} In light of BMW's limited argument on appeal which almost entirely focuses on *Lester* and what findings the jury must have made, we conclude that BMW has failed to meet its burden to demonstrate that the trial court erred in denying the motion for JNOV.

{¶35} BMW's assignment of error is overruled.

### III.

{¶36} BMW's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

TIMOTHY V. HOFFMAN, Attorney at Law, for Appellant.

JOHN FRAVEL, pro se, Appellee.